### In re STOCK'S WILL.

No. 24508. June 11, 1935.

Rehearing Denied Sept. 10, 1935.

Application for Leave to File Second Petition for Rehearing Denied Oct. 8, 1935.

Karl D. Cunningham, for plaintiff in error.

T. R. Blaine, for defendants in error.

PER CURIAM. This is an appeal from a judgment and decree denying probate of an instrument alleged to be the last will and testament of John Stock purported to have been executed July 23, 1929. At the time the document is alleged to have been signed, deceased had a wife, Eva Stock, the proponent, and two brothers, Jacob Stock and Fred Stock, and one sister, Kate Amrehn, contestants. Since the beginning of this case, said Fred Stock died leaving a widow, Mattie Stock, and three children, namely, Nona Smith, Augusta Mae Stock, and Lloyd Stock. The widow, Mattie Stock, as administratrix of the estate of Fred Stock, and the heirs of Fred Stock, joined as contestants.

The protestants alleged:

(1) That said will was not executed and attested as required by law and is wholly void.

(2) That said alleged and pretended will is a forgery and that the signature thereto is not the true and genuine signature of the said John Stock.

Hearing was had before the county court, where probate of the will was denied. Proponent appealed to the district court, where hearing de novo was had, and probate of the will was therein denied, and proponent prosecutes this appeal.

The alleged will appears to have been signed and attested with all the formalities prescribed by law. The will provided:

"Being aware of the uncertainties of life, I make this the last will and testament of me, John Stock, of Loyal, Okla.; and I do hereby make, publish and declare this to be my last will and testament, hereby revoking all former wills by me made.

"First. I direct my executor hereinafter named to pay all my just debts, funeral and testamentary expenses.

"Second. I order and direct that my said executor pay to my brothers, Jacob Stock.

and to Fred Stock; and to my sister Kate Amrehn, the sum of One Dollar, each.

"Third. All the rest, residue and remainder of my estate, real, personal and mixed, I give, devise and bequeath to my beloved wife, Eva Stock.

"Fourth: I appoint Eva Stock, my wife aforesaid, to be executrix of this, my will, without bond.

"Fifth. I hereby revoke any and all former wills by me heretofore made.

"In witness whereof, I do hereby make, publish and declare this to be my last will and testament, at the city of Kingfisher, Oklahoma, this twenty-third of July, 1929.
"John Stock.

"We, the undersigned hereby certify that the above and foregoing instrument was signed, published and dclared by John Stock of Loyal, Okla., to be his last will and testament, in our presence, and in the presence of each other; and we, each, at his request, in his presence, and in the presence of each other subscribe our names as witnesses hereto, at the time and place aforesaid.
"Vern Henderson
"Kingfisher, Okla.
"RR No. 1.

"W. E. Poarch
"Kingfisher, Okla."

The only material question to be decided by this court is whether the instrument offered for probate bears the true signature of the deceased.

W. E. Poarch, one of the witnesses to the alleged will, testified in substance as follows:

That he lived in Kingfisher, Okla.; that he witnessed a will for John Stock on July 23, 1929, at D. K. Cunningham's office. On cross-examination, Mr. Poarch, whose name appears on the alleged will as one of the subscribing witnesses, testified that the will which he signed on July 23, 1929, was signed with an ordinary desk pen, not a fountain pen; that he has compared his signature made with a fountain pen with his signature appearing on the disputed will, and it was his judgment that the signature of W. E. Poarch appearing on the disputed will was made with a fountain pen. The witness, Poarch, further testified that after John Stock died, his widow, Eva Stock, asked Poarch if he had witnessed a will of John Stock and that he replied he had; that a short time thereafter, Eva Stock came to the witness and stated that she had a will of John Stock which had no witnesses and asked Poarch if he would sign the will as a witness. This was months after John Stock had died. Poarch stated that he at that time refused to sign the instrument for Mrs. Stock. He further stated that she came back two or three weeks later and again tried to get him to sign as a witness a pretended will of John Stock, and that he refused. Poarch further testified that in the summer of 1930, Eva Stock again came to him and stated that it was just a year then since he had witnessed John Stock's will; that Mrs. Stock told the witness she was going to make a trip and asked him to give her his name and address, and that she gave the witness a fountain pen and that she took an ordinary sheet of legal size paper and folded the top part down to where only a small part was showing and he, with Mrs. Stock's fountain pen, signed his name and place of residence. Witness examined the disputed document and stated that his name and address "W. E. Poarch, Kingfisher, Oklahoma", appeared on the will at about the same place where he had signed his name and address on this sheet of paper for Mrs. Stock; that the proposed will had his name and address thereon apparently written with a fountain pen, although he had signed the original will with what he called a desk pen and not a fountain pen. Witness stated that he could not say that the disputed instrument was the will of John Stock which he had first signed.

This witness further testified that one Vern Henderson and he were at Karl Cunningham's office just before this will was produced by Cunningham in court, at which time they discussed the John Stock will. Karl Cunningham had the witness and Henderson sign one, two or perhaps three papers as witnesses. This was about October, 1930. That witness Poarch did not know the contents of such instruments and did not read them. He further stated that these papers which he and Henderson signed for Karl Cunningham just before the Stock will was produced were left with Karl Cunningham. Vern Henderson was the other witness on the alleged will.

Vern Henderson testified that he was not personally acquainted with John Stock on July 23, 1929, but that he witnessed Stock's signature to the will in Cunningham's law office on that date. Although it had been three years since he claimed to have witnessed the execution of this will, he testified in great detail as to the minute circumstances occurring at the time the will was signed and witnessed. The witness admitted that although he was without a job, Mr. Stock had let him have $150, and had

paid him other sums of money for expenses. The witness testified positively that the will which he claimed was signed in Karl Cunningham's office on July 23, 1929, was signed by him and Poarch with an ordinary desk pen. His testimony in that particular is the same as the testimony of Poarch, except Poarch stated that the instrument offered for probate was signed by him with a fountain pen. Henderson denied that he and Poarch were at the office of Karl. Cunningham about October, 1930, at which time the will of John Stock was discussed. He also denied he and Poarch signed a number of papers for Karl Cunningham as witnesses. Neither witness testified positively that the instrument offered for probate was the one witnessed for, John Stock.

Testimony was given by several witnesses that Eva Stock, before the alleged will was produced, requested that they sign a paper which was to be a will of John Stock, and was to be found at a later date and presented in probate court as John Stock's will. All refused to sign. One witness testified that he was offered $1,000 to sign. From another witness Eva Stock offered to buy an automobile if he would sign, all of which was denied by Eva Stock.

Bankers testified that Eva Stock borrowed a total of $1,250 early in October, 1930, all of which she took in cash or currency, which was immediately preceding the presenting of the alleged will in court. Attorney Karl Cunningham testified that he found the purported will in his deceased father's desk about March 27, 1930, but did not know what was in the plain, unmarked envelope, and did not open same. He kept the envelope until October 14, 1930, for reasons known only to himself, then took it to the county judge and it was there opened.

A handwriting expert testified that he had compared the purported signature of John Stock appearing on the disputed instrument with about 35 admittedly genuine signatures of deceased, and it was his opinion that the signature of John Stock appearing on the will was a forgery. The original instrument is in the record, as well as numerous photographic copies admittedly genuine signatures of the deceased.

It is generally held that the burden of proving the due execution and attestation of a will is upon the proponent. In re Six Killer's Estate, 168 Okla. 302, 32 P. (2d) 936. In the case of Nelson et al. v. York et al., 87 Okla. 210, 209 P. 425, this court held:

"In a proceeding to probate a will, where the right to admit the will to probate is contested, the burden of proof rests upon the proponents of the will to establish by a preponderance of the evidence that the will was executed according to the provisions of the statutes prescribing the manner of executing and publishing a will." In re Stover's Will, 104 Okla. 25, 231 P. 212.

In the case of Benson et al. v. Benson et al., 125 Okla. 151, 256 P. 912, this court held:

"Where a probate of a will is contested and the testimony is conflicting as to the execution of the will, the judgment of the trial court will not be disturbed if there is any substantial testimony supporting the judgment and findings of the court."

We hold that the proponent failed by a fair preponderance of evidence to show that testator executed the purported will according to law, and that the instrument proffered for probate was not the will of John Stock, but was a forgery and spurious instrument, and that the judgment of the trial court denying probate will not be disturbed.

The record of this case has been carefully examined by this court, and we find that the trial court made no reversible error, and the case is affirmed.

The Supreme Court acknowledges the aid of Attorneys Oscar Speed, J. A. Minton, and Fred B. Cornels in the preparation of this opinion. These attorneys constituted an advisory committee selected by the State Bar, appointed by the Judicial Council, and approved by the Supreme Court. After the analysis of law and facts was prepared by Mr. Speed and approved by Mr. Minton and Mr. Cornels, the cause was assigned to a Justice of this court for examination and report to the court. Thereafter, upon consideration by a majority of the court, this opinion was adopted.

McNEILL, C. J., and RILEY, WELCH, PHELPS, and GIBSON, JJ., concur.